**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**DRAGAS MANAGEMENT CORPORATION,**

        **Plaintiff,**

**v.**                                 **Civil Action No. 2:10cv547**

**HANOVER INSURANCE CO., *et al*.,**          **File Under Seal**

        **Defendants.**

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

It remains undisputed that Dragas Management Corporation ("DMC") has a $4.9 million judgment against Porter-Blaine Corporation ("Porter-Blaine"), the insured of Hanover Insurance Co. and Citizens Insurance Company of America (collectively "Hanover").   It also remains undisputed that, although Hanover defended Porter-Blaine throughout the legal proceeding that resulted in the $4.9 million judgment (including the five-day evidentiary hearing before the independent arbitrator), Hanover refuses to pay the judgment.  Hanover's primary position at this stage is that it needs discovery before this Court can enter partial summary judgment for DMC.

The Court should reject this argument for at least the following reasons:

1)    This case comes to the Court with a full record from the arbitration, where each side took full discovery, including depositions, written discovery and document production, and where each side was represented by counsel at a five-day evidentiary hearing;

2)    Hanover has failed to point to any material factual questions for which fully-litigated answers do not already exist as a result of the arbitration in which Hanover fully participated; and

3)      Where there are no disputed issues of material fact, this Court should not permit Hanover to seek discovery simply to delay the inevitable.

Hanover also raises several legal defenses, none of which should detain this Court for long.  As an initial matter, given that this case involves an actual judgment already entered against Hanover's insured, Hanover's attempts to place the burden of showing coverage on DMC's shoulders is improper.  Instead, since Hanover defended its insured in the arbitration, the law dictates that Hanover has the burden to show that the judgment is not covered.  In addition, the facts Hanover claims that it needs – such as the increment of damage attributable solely to the repair and replacement of the drywall itself – were part of the record at the arbitration hearing, so Hanover already is well aware of these amounts, even assuming its legal argument that such damages are not recoverable is correct.

As for the merits of the defenses, they have none.  As demonstrated below, there is no genuine legal impediment to the relief DMC seeks.  In fact, Hanover in its Brief in Opposition concedes major aspects of this case.  Hanover does not contest the existence of coverage for "resulting" property damage (i.e., the damage to other property caused by the Chinese drywall). Hanover merely questions how much of that "resulting" damage should be attributable to the specific policy years placed at issue by the Motion for Partial Summary Judgment (November 15, 2005 – November 15, 2007) and how many occurrences happened.  Similarly, the exclusions Hanover cites would not bar coverage; rather, they at most would potentially limit the coverage to the "resulting" damages.

Therefore, the Court, at a minimum, should enter partial summary judgment on liability as to the Policies in question, and simply defer the question surrounding the drywall repair and replacement increment of damage.  DMC certainly believes – and the law so holds – that

Hanover has failed to carry its burden to show what part of the $4.9 million judgment is not covered by the Policies and that the Motion should be granted as to the entire $4 million in coverage available. Even if Hanover's arguments in response are credited, however, the Court should rule now that Hanover is liable under the November 15, 2005 – November 15, 2007 Policies for that portion of the $4.9 million judgment attributable to homes completed before November 15, 2007 ($4,239,051.95), except for the costs associated with repair and replacement of the drywall itself ($693,856). Under such a ruling, DMC's entitlement to recover the latter increment of damage would await future motion practice and trial.

For these reasons and those discussed below, the Court should grant DMC's Motion for Partial Summary Judgment.

## Statement of Undisputed Facts

## I. Facts Now Deemed Undisputed

1. DMC has a $4.9 million judgment against Porter-Blaine. (Brief in Opp'n. p. 3, ¶ 1).

2. Hanover insured Porter-Blaine during the years at issue in the Motion for Partial Summary Judgment (2005-07). (Id. at p. 6).

3. Hanover defended Porter-Blaine during the arbitration and evidentiary hearing that led to the judgment. (DMC Mem. in Supp. pp. 8-9). Hanover does not dispute this fact.[1]

4. Hanover insured Porter-Blaine, and the contents of the insurance policies as set forth in DMC's statement of undisputed facts are not disputed. (Brief in Opp'n. p. 10).

5. The certificates of occupancy for the homes are set forth on Exhibit A to the Declaration of Brian Kokoska. (DMC Mem. in Supp. p. 6). Hanover does not dispute this fact.

---

[1] See Local Rule 56(B) (stating that facts included in the statement of undisputed facts will be deemed admitted unless such a fact is controverted in the opposing party's statement of genuine issues).

## II.   Facts That Were Established in the Arbitration Proceeding Hanover Defended for its Insured, Porter-Blaine

1. ███████████████████████████████████████████████████

████████████████████████████████████████████████████ (Supplemental

Declaration of Kristan B. Burch, Esq. ¶ 1, Ex. M, "Joint Arbitration Stipulations of the Porter-

Blaine Corporation and Dragas Management Corporation").

2. ███████████████████████████████████████████████████

██████████████████ (<u>Id.</u> at Ex. M, ¶ 2).  This remediation work included work performed

on the homes at issue in the documents Hanover attached to its Memorandum in Opposition (i.e.,

those homes Hanover now claims incurred no damage and therefore did not need to be

remediated).  (<u>Id.</u> at Ex. O).

3. ███████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████ (<u>Id.</u> at Ex. M, ¶ 3).

4.     DMC introduced two damages spreadsheets into evidence at the arbitration

hearing, which together set forth in detail the nature and type of damages incurred by DMC.

(Burch Supp. Decl., Exs. N and O).

5.     These spreadsheets break down the damages by specific home, including those

homes Hanover now claims did not need to be remediated (even though the lawyers it hired and

paid for to defend Porter-Blaine stipulated at the arbitration hearing that the remediation work

was reasonable and caused by the Chinese drywall).

6.     DMC also introduced into evidence at the arbitration hearing detailed inspection

reports for all of the homes, including those that Hanover now claims in its Memorandum in

Opposition were not damaged.  These inspection reports are attached as Exhibit P to the Burch

Supplemental Declaration.   They reveal, among other things, that there was, in fact, wire corrosion and other damages caused to the homes (see notations of "darkened" or "tarnished" wires and HVAC coils).[2]   Again, Porter-Blaine's lawyers, who were hired by and paid by Hanover, stipulated to these facts during the hearing that ultimately led to the entry of the $4.9 million award and judgment.

7.      The record in the arbitration established that the damage occurred during 2006-2007, after the homes were completed and the homeowners moved into their homes (and began to circulate heated and cooled air through the homes via the homes' HVAC systems).   (Burch Supp. Decl., Ex. Q (excerpts from transcript of arbitration hearing)).

**III.**    **Facts Hanover Claims Cannot Be Addressed Without Discovery**

Hanover claims it allegedly needs discovery to address many of the facts set forth in DMC's statement of undisputed facts.   Hanover specifically contends (A) that, despite the record generated after months of discovery and a five-day arbitration, it needs more time to investigate the extent and timing of the property damage underlying the $4.9 million judgment.   (Malloy Aff., ¶¶ 5, 7-8), and (B) that it needs to depose Sam Porter regarding whether the work installing Chinese drywall was performed by subcontractors.   (Brief in Opp. pp. 9-10).   As demonstrated below, Hanover's claims are without merit.

A.      Further Discovery Is Not Warranted

The Court should reject Hanover's request for discovery because (i) Hanover did not comply with the federal procedure applicable when seeking further discovery in response to a summary judgment motion, and (ii) the only evidence this Court needs in this action for coverage

---

[2] Indeed, even the documents relied upon by Hanover in its Brief in Opposition confirm, rather than rebut, the existence of property damage and odor. (See, e.g., Brief in Opp'n., Ex. A, DRAGAS 316890 ("Obvious corrosion on evaporator coil")).

of an existing judgment is the fact of that judgment and the record in the underlying proceeding

(in this case, an arbitration) that led to the judgment.

With respect to the first issue, Hanover did not comply with Federal Rule of Civil

Procedure 56(d) and therefore its request for discovery should be denied. This Court has

described the requirements of Rule 56(d)[3] as follows:

> To oppose summary judgment under Rule 56(f), the party's Rule
> 56(f) affidavit must contain (1) the information sought and how it
> is to be obtained; (2) how a genuine issue of material fact will be
> raised by that information; (3) what efforts the affiant has made to
> obtain the information; and (4) why those efforts were
> unsuccessful.  If the additional discovery will not likely generate
> evidence germane to the summary judgment motion, the district
> court may, in its discretion, proceed to rule on the motion without
> further ado.  The court need only concern itself with contradictions
> of salient facts; factual disputes over issues not germane to the
> claim are simply irrelevant because they are not outcome
> determinative.

U.S. v. Smithfield Foods, Inc., 969 F. Supp. 975, 978 (E.D. Va. 1997) (citations and internal

quotation marks omitted), aff'd in pertinent part, rev'd in part, 191 F.3d 516 (4th Cir. 1999).

Hanover has not complied with this requirement.  Instead, it has simply pointed to the alleged

need for discovery on the timing of the damage to determine what part of the $4.9 million

judgment falls within the scope of its Policies.  And while Hanover points to discovery efforts it

has made in the parallel BMIC action as support for its efforts to obtain the information, it fails

to recognize that this case comes to the Court on the basis of a judgment against Hanover's

insured.

That judgment was entered after full discovery (including depositions) was taken in the

underlying arbitration, after a five-day evidentiary hearing conducted before an independent

---

[3] Prior to December 1, 2010, this rule was actually found in 56(f), not 56(d).  As of December 1, 2010, Rule 56 was
reformatted and this requirement now appears in Rule 56(d).  See Official Commentary to 2010 Amendments
("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).")

arbitrator, and after lawyers hired by and paid for by Hanover entered into certain stipulations on the record of the arbitration proceedings. Hanover never mentions this discovery and information that is at its disposal, and it certainly does not explain why it has been unsuccessful in finding the information it seeks in this voluminous record. In sum, Hanover has not complied with Rule 56(d).

Second, as discussed more fully infra at pp. 9-12, the issue of whether Hanover's policies should cover the judgment should be decided on the record at arbitration. That record contains all of the facts necessary for a conclusion by this Court that the judgment is covered – since the judgment and record below is sufficient, this Court should reject any attempt by Hanover to "re-litigate" those issues in this forum. See U.S. Gypsum Co. v. Admiral Ins. Co., 643 N.E.2d 1226, 1243 (Ill. Ct. App. 1994) ("One who has taken to indemnify another against loss arising out of a certain claim and has notice and opportunity to defend an action brought upon such a claim is bound by the judgment entered in such action, and *is not entitled*, in an action against him for breach of his agreement to indemnify, *to secure a retrial* of the material facts which have been established by judgment against the person indemnified.") (emphasis added) (citation omitted).[4]

B.      There is No Need to Re-Depose Sam Porter

The Court also should summarily reject Hanover's request to re-depose Sam Porter in this action to find out – again – what he has to say about the use of subcontractors. Sam Porter was deposed in the arbitration proceeding leading to the $4.9 million judgment, where he was defended by lawyers hired by Hanover. In his deposition, as in his hearing testimony, he unequivocally stated that the installation of the Chinese drywall was performed by subcontractors. (Burch Supp. Decl., Ex. R, pp. 17-18).

Hanover attempts to cloud this issue by claiming that Porter's hearing testimony is ambiguous because the testimony includes a reference to Porter Blaine's direct employees.  But Hanover knows exactly what Porter's testimony meant, because Hanover's own insurance underwriting documents (which it has produced in the BMIC companion case) describe in detail Porter-Blaine's use of subcontractors for new home installations.  These documents, generated and relied upon by Hanover at policy inception, confirm that Porter-Blaine always used subcontractors to perform new installations and used its own employees solely to do renovation, repair or patch work.  (See Loss Control Survey Report, at H2135, attached as **Exhibit 1** ("Mr. Porter indicated that they do new construction as well as renovations and repair work . . . . Mr. Porter indicated that he subcontracts all of the new construction work . . .  The renovations and repair work [is] done by the insured's employees . . . .); Id. at H2146 ("Insured subcontracts all new construction work to subs with hold harmless contracts as requirement for COIs [Certificates of Insurance].   Approx. $3,000,000 in subcontracted labor annually.   Insured's employees perform the small renovation, remodeling and patch work jobs.")).

All of the above-referenced evidence is and has been in Hanover's possession.  Re-discovery of such evidence cannot justify postponing summary judgment.  See Mason Tenders Dist. Council Pension Fund v. Messera, 958 F. Supp. 869, 894 (S.D.N.Y. 1997) ("Relief under Rule 56(f) is not appropriate where the discovery allegedly desired pertains to information already available to the non-moving party.") (citation and internal quotation marks omitted).  In sum, there are no material disputed facts that should prevent this Court from granting DMC's Motion for Partial Summary Judgment.

---

[4] U.S. Gypsum cited to Couch on Insurance, § 74:186 at 1087 for this quote.  Because Couch has been reformatted since the time of the decision, the current location for this quote in the treatise is § 239:73, which is titled "Insurer as Bound by Finding of Liability."

**ARGUMENT**

**I.**     **The Burden is On Hanover to Show Those Parts of the Judgment, if Any, That Allegedly Are Not Covered**

Initially, Hanover misstates the burdens applicable in this case.  Where an insurance company defends its insured in the underlying action, judgment is entered, and there is a subsequent effort by the judgment creditor to enforce the insurer's coverage obligation (in other words, in scenarios just like this one), the insurance company – not the judgment creditor – bears the burden to show those portions of the judgment that are not covered.  See Auto Owners Ins. Co. v. Newman, 684 S.E.2d 541, 546-47 (S.C. 2009) (holding that since insurer, which defended insured in underlying arbitration, did not raise the issue before the arbitrator of covered resulting damages versus allegedly uncovered costs of repairing and replacing defective stucco itself, the total damages awarded by arbitrator were to be paid by insurer); Camden-Clark Mem'l Hosp. Ass'n v. St. Paul Fire and Marine Ins. Co., 682 S.E.2d 566, 576 (W. Va. 2009) (holding that while insured typically bears burden to allocate a verdict between covered and non-covered claims, where insurer has an affirmative duty to defend the insured under the policy terms, the burden shifts to insurer); MedMarc Cas. Ins. Co. v. Forest Healthcare, Inc., 199 S.W.3d 58, 62 (Ark. 2004) ("We conclude that MedMarc [i.e., the insurer] indeed assumed the burden of apportioning the judgment once it took over the defense …."). See also Am. Home Assurance Co. v. Evans, 589 F. Supp. 1276, 1288 (E.D. Mich. 1984) (finding that "[t]o allow the burden of proof to remain upon the judgment creditor on the allocation problem under the circumstances permits the insurer to benefit by its own improper actions"), vacated on other grounds, 791 F.2d 61 (6th Cir. 1986); Allan D. Windt, Insurance Claims & Disputes § 6:27 (4th ed.) (hereinafter, "Windt") (stating that the "burden of persuasion should be placed on the insurer" in those cases where the insurer was obligated to seek an allocated verdict but failed to do so).

The United States Court of Appeals for the Tenth Circuit has reached the same conclusion, holding that, "[b]ecause [the insurer] controlled Magnum's defense in the state litigation, [the insurer] bears the burden of demonstrating the basis" of the jury's award. Magnum Foods, Inc. v. Continental Cas. Co., 36 F.3d 1491, 1499 (10th Cir. 1994).  The court explained this rule as follows:

> As an initial matter, we note that an insurer who undertakes the defense of a suit against its insured must meet a high standard of conduct.  The right to control the litigation carries with it certain duties.  One of these is the duty not to prejudice the insured's rights by failing to request special interrogatories or a special verdict in order to clarify coverage of damages.  The reason for this is that when grounds of liability are asserted, some of which are covered by insurance and some of which are not, a conflict of interest arises between the insurer and the insured.  If the burden of apportioning damages between covered and non-covered were to rest on the insured, who is not in control of the defense, the insurer could obtain for itself an escape from responsibility merely by failing to request a special verdict or special interrogatories.  The insurer is in the best position to see to it that the damages are allocated; therefore, it should be given the incentive to do so.

Id. at 1498-99 (internal citations omitted).  See also Duke v. Hoch, 468 F.2d 973, 977-79 (5th Cir. 1973) (finding that judgment creditor was relieved of burden of proof in action against insurer because, *inter alia*, "whether done ingeniously or disingenuously, [the insurer], in control of the defense, has protected its interest and secured for itself an escape from responsibility at the expense of the insureds ….").

Here, there is no dispute that Hanover controlled the defense of the arbitration against Porter-Blaine.  Thus, Hanover, not DMC, bears the burden to show what portion of the $4.9 million judgment, if any, is not covered by its policies.

**II.      Hanover Is Not Entitled to Relitigate the Claims That Gave Rise to the Judgment**

Furthermore, Hanover is not entitled to re-discover and retry its case.  While, as noted above, Hanover has failed to comply with Rule 56(d), even without that failure an insurance company is not entitled to retry or relitigate matters from the prior case in an action seeking to enforce insurance coverage for the judgment.  U.S. Gypsum, 643 N.E.2d at 1243 (holding that insurer not entitled to secure a retrial of the material facts established by the judgment).  See also Penn-Star Ins. Co. v. Griffey, 306 S.W.3d 591, 601 (Mo. Ct. App. 2010) (observing that the duty to indemnify is determined by a review of the facts as established in the record leading to the judgment at issue, whether at trial or through summary judgment findings); Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 896 (9th Cir. 1996) ("[W]hether a judgment triggers insurance coverage depends on a comparison of the judgment with the terms of the policies in question.") (applying California law); Midwestern Indem. Co. v. Laikin, 119 F. Supp. 2d 831 (S.D. Ind. 2000) (holding that insurer was not permitted to re-litigate issues of liability or damages that were established by consent judgment entered against insured).

The facts that Hanover claims are necessary to its defense were either all at issue in the arbitration (e.g., whether and when the Chinese drywall caused the damage; the extent of the damage; the homes damaged; the type of damage incurred; the reasonableness of the remediation efforts, etc.), have been established as undisputed here (e.g., the occupation dates of the homes), or are in Hanover's own possession (e.g., the insurance application materials showing the use of subcontractors) and therefore cannot serve as a basis to avoid summary judgment.  See Mason Tenders, 958 F. Supp. at 894.

In sum, this Court has the information necessary to grant the Motion before it right now.

## III.   DMC is Entitled to the Entire $4 Million in Coverage At Issue in this Partial Motion

Hanover concedes that it is liable for the property damage experienced at The Hampshires and Cromwell Park that occurred during the November 15, 2005 – November 15, 2007 policy period as a result of exposure to the Chinese drywall (i.e., the "resulting" damage). Hanover only contests coverage for the property damage embodied in the repair and replacement of the Chinese drywall itself.  Hanover contests coverage of the drywall repair and replacement increment of damage on multiple grounds.[5]

First, as discussed in Section I, above, Hanover – not DMC – bears the burden to show that part of the judgment it believes is not covered by the policies at issue.  It has utterly failed to do so, and the Court should reject its arguments for this reason alone.

Second, Hanover's argument that the removal and replacement are not an occurrence and are not property damage misses the mark.  In this case, where the drywall had to be torn out in order to get to other damaged property inside the walls, such as corroded electrical wiring and gas lines, the drywall repair and replacement is covered as "part of the cost" of such repairs. Mut. of Enumclaw Ins. Co. v. T & G Constr., Inc., 199 P.3d 376, 384-85 (Wash. 2008); Riverfront Landing Phase II Owners' Ass'n v. Assurance Co. of Am., No. C08-0656RSL, 2009 WL 1952002, at *6 (W.D. Wash. July 6, 2009) ("[T]o the extent that removal and repair of [insured's] work was necessary to get to and repair the resultant damage to the work of another, those consequential damages are covered losses.").  The repair and replacement of the drywall was also necessary as a remedy for the existing property damage and to prevent further damage.

---

[5] Sections I(A), I(B), IV and V of Hanover's brief in opposition all make exactly the same point, although they rely on different parts of the Policies for support.  See Brief in Opp'n. pp. 24-29 (addressing faulty workmanship exclusion, performing operations exclusion and impaired property exclusions).  In Hanover's view, the impact of all of these provisions is that they remove coverage for that part of DMC's damages that consists of removing and replacing the Chinese drywall itself.  As discussed above, it is Hanover's burden to show such an apportionment.

See Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp., 73 F.3d 1178, 1208 (2d Cir. 1995), modified on other grounds and reh'g denied, 85 F.3d 49 (2d Cir. 1996); see also Dayton Indep. Sch. Dist. v. Nat'l Gypsum Co., 682 F. Supp. 1403, 1412 (E.D. Tex. 1988) (holding that the exclusion did not bar recovery for the cost of removal, containment, and replacement of asbestos to remedy damage to building) rev'd on other grounds sub nom. W.R. Grace & Co.   v. Continental Cas. Co., 896 F.2d 865 (5th Cir. 1990).   Under either rationale, it is covered under the Hanover policies and not excluded.

The Fourth Circuit Court of Appeals has decided a similar case involving a manufacturer of defective vinyl siding.   ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 104 (4th Cir. 2006).   Because ABT deals with a manufacturer rather than an installer, the exclusion at issue is a "your product" exclusion, but the case is still instructive on coverage for repair and replacement associated with defective materials.   Id. at 118.   In ABT, the Fourth Circuit affirmed the district court's instruction that "the cost of removing the defective siding and installing and painting the new siding" was within coverage and not excluded.   Id. at 119 n. 28. This holding confirms the logic of Mut. of Enumclaw and Stonewall that such costs are covered and not excluded.

Hanover relies on OneBeacon Ins. Co. v.  Metro Ready-Mix, Inc., 242 F. App'x 936 (4th Cir. 2007), for the proposition that damage incurred in removing the drywall is not covered. OneBeacon is distinguishable because the court explicitly found no damage to other property as a result of the defective work, but rather that the damage occurred only because of the replacement.   Id. at 940-41.   Here, the Chinese drywall has damaged other property and would continue to do so if not removed.   This critical factor distinguishes Chinese drywall, asbestos, and the defective siding in ABT, from the defective grout in OneBeacon.

Third and finally, even if the Court concluded that the drywall repair and replacement increment of damage is not recoverable, partial summary judgment is appropriate.   DMC has provided this Court the damage charts that formed the basis for the $4.9 million judgment, which Hanover has had since at least 2009 when discovery began in the arbitration involving Porter-Blaine.  Those damage charts set forth specifically the costs DMC incurred to repair and replace the Chinese drywall.  (See Burch Supp. Decl., Exs. N and O, Cost Code 8820).  Those costs total $693,856.  (Id.)  At this point, Hanover may not re-litigate this fact because it was already established in the arbitration leading to the judgment.  USX Corp. v. Adriatic Ins. Co., 99 F. Supp. 2d 593, 612 (W.D. Pa. 2000) ("[A] judgment recovered against an insured by an injured party is conclusive on the issues there determined in a subsequent proceeding by the injured party or by the insured against the insurance carrier for indemnity.") (citation omitted); Windt at § 6.26.[6]

With the increment of damage attributable to drywall repair and replacement cost conclusively established by the arbitration record, the Court has what it needs to fashion a partial summary judgment remedy.  Even if the Court looks past – which it should not – Hanover's failure to proffer evidence of what it contends the excluded increment of damage to be, and even if the Court disagrees that the drywall repair and replacement qualifies in this case as an

---

[6] On page 14 of its opposition, Hanover references several documents that it claims show DMC did work on homes where damage had not occurred.  However, Hanover has only provided the Court with part of the homeowners' records – other portions clearly show that damage existed. (Burch Supp. Dec., Ex. P).  Furthermore, as pointed out in the fact section, supra, while controlling the defense of Porter Blaine, lawyers hired by Hanover stipulated ██████  As a fact in the record supporting the judgment, it is now conclusively established.  Finally, to suggest that any of the seventy-four (74) homes had not sustained corrosive property damage as a result of the Chinese drywall ignores the abundant Government-sponsored tests, analyses and reports that have been amassed over the last two years.  See generally Consumer Product Safety Commission, Drywall Information Center, http://www.cpsc.gov/info/drywall/index.html (last visited Jan. 21, 2011).  Though they had not been promulgated at the time DMC agreed with homeowners to remediate their properties, the Consumer Products Safety Commission's "Interim Guidance – Identification of Homes with Corrosion from Problem Drywall" (August 27, 2010) convincingly confirms the corrosive link between Chinese drywall and property damage in the homes.  See http://www.cpsc.gov/info/drywall/guidance0827.pdf (last visited Jan. 21, 2011).

occurrence and as property damage, the Court should at a minimum enter partial summary judgment now in an amount that deducts the drywall repair and replacement increment of damage ($693,856) from the $4.9 million underlying judgment amount.  Under that scenario, the Court should defer a ruling on the recoverability of the drywall repair and replacement increment of damage, as Hanover requests, until a later time.

## IV.   Hanover Must Prove Any Occurrences Outside the Policies' Coverage

Hanover's second legal argument is that DMC has not shown the damages that were caused by occurrences happened within the Policy periods at issue, i.e., November 15, 2005 through November 15, 2007.

First, Hanover again misstates the burden – as demonstrated above, Hanover bears the burden of showing that part of the $4.9 million judgment, if any, that falls outside the Policies' coverage.  With the limited exception discussed immediately below, Hanover has failed to carry its burden, and the Court should therefore grant the Motion.

Hanover is correct that certificates of occupancy for certain of the homes affected by Chinese drywall were issued after November 15, 2007.  Since the evidence in the arbitration was that the damages occurred after the homes were completed, the homeowners moved into their homes, and the Chinese drywall began damaging personal property, corroding internal wiring and copper piping, and tarnishing fixtures, Hanover's point with respect to these post-November 15, 2007 COs is well-taken.  Yet, again, that should not preclude this Court from entering partial summary judgment now in an amount that deducts the increment of damage attributable to the property damage sustained in the homes with Certificates of Occupancy dated after November 15, 2007.  As the undisputed evidence reveals, there were thirteen (13) such homes. (Kokoska Dec. Ex. A).  The total cost attributable to those thirteen (13) homes is $660,948.05.

See Burch Supp. Decl., Exs. N and O.  Thus, the eligible portion of the $4.9 million underlying judgment, as conclusively established by the record before the Court, is $4,239,051.95 ($4.9 million minus $660,948.05), which exceeds the $4 million policy limits.  Assuming the Court agrees with DMC's arguments above regarding coverage of the drywall repair and replacement increment of damage, the partial summary judgment would be for the $4 million policy limits.

In sum, Hanover has not met its burden on this issue.  The Court should enter partial summary judgment in an amount that derives from the eligible portion of the $4.9 million underlying judgment after reduction for the homes with post-November 15, 2007 COs.

## V.    Hanover is Liable for Multiple Occurrences

The Court also should conclude that Hanover's coverage obligations extend to multiple occurrences.[7]

While the Supreme Court of Virginia specifically addressed this issue in (S.F.) Jane Doe v. West American Insurance Co., 250 Va. 461, 463 S.E.2d 450 (1995), Hanover waits until it has discussed occurrences for three pages of its brief before it even mentions this decision.  (Br. in Opp'n. pp. 18-21).  When it does, Hanover attempts to distinguish the case by arguing that there were potentially multiple causes of injury in that case (e.g., negligent hiring, training, retention, supervision), while here there allegedly is "only one cause of the damage claimed by Dragas." (Id. at p. 18).

---

[7] While Hanover disputes whether the defective drywall itself qualifies as an occurrence under the Policies, it does not contest that there was an occurrence to the extent the defective Chinese drywall damaged other nondefective portions of the homes.  (Brief in Opp. pp. 11 et seq.); See Stanley Martin Companies v. Ohio Cas. Group, 313 F. App'x 609, 613-14 (4th Cir. 2009) (unpublished opinion applying Virginia law) ("damage a subcontractor's defective work causes to an insured's nondefective work constitutes an occurrence."); French v. Assurance Co. of Am., 448 F.3d 693 (4th Cir. 2006) (holding that breach of contract liability for damage to nondefective structure and walls of home caused by moisture intrusion through defectively-installed cladding constituted an occurrence); Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc., 673 N.W.2d 65 (Wis. 2004) (holding that general contractor's breach of contract liability for defective work of subcontractor constituted an occurrence).

Hanover's attempts at distinguishing <u>Jane Doe</u> fall short.  Applying its logic to the facts of <u>Jane Doe</u> would lead to the conclusion that there was only one cause of injury in that case as well – the employee sexually abusing children.  But the Supreme Court of Virginia did not apply such a narrow view, and instead considered that decisions related to the hiring of the employee, retaining the employee, training the employee or supervising the employee each could be deemed the "cause" of the injury.

Likewise, here there are multiple potential "causes" of the injury – the decision by Porter-Blaine to install Chinese drywall at each of the homes clearly is one of those causes.  In fact, the evidence is that Porter-Blaine did not decide to use Chinese drywall in all of the homes at The Hampshires and Cromwell Park – thus, the decision by Porter Blaine <u>not</u> to install the drywall in those particular homes avoided the damage in those cases.  This by itself proves that Porter-Blaine's decision with respect to each home is one of the potential causes of the injury.  Given that the term "occurrence" is susceptible to multiple interpretations, it should be deemed ambiguous and construed in favor of coverage.  250 Va. at 464-65, 463 S.E.2d at 452.

In addition, Hanover's reference to the "continuous or repeated exposure to substantially the same general conditions" portion of the definition of occurrence is a red herring.  Each of the homes in which Chinese drywall was installed were "continuously exposed to substantially the same general conditions," and therefore each experienced damage to wiring, personal property, copper piping, and/or virtually any other item that could corrode or tarnish.  The fact of this damage and the fact that it was caused by Chinese drywall have been conclusively established by the stipulation entered into before the arbitrator that led to the judgment.

Hanover's citation to cases outside Virginia on this point should not lead to any contrary result.  Yet even if the Court looks to other jurisdictions, DMC's position finds support and

Hanover's position grows weaker.  For example, in <u>Commercial Union Insurance Co. v. Porter</u> <u>Hayden Co.</u>, 698 A.2d 1167 (Md. Ct. Spec. App. 1997), the court concluded that the liability of the *installer* of asbestos insulation was caused by multiple occurrences because, "the immediate rather than the remote cause of the injury" was the significant event – i.e., "the event causing damage, not the earlier event creating the potential for future injury."  <u>Id.</u> at 1211.[8]  In sum, the liability of Porter Blaine, the installer of the Chinese drywall, was caused by multiple occurrences.

## VI.   <u>The "Your Work" Exclusion Does Not Bar Coverage</u>

Hanover concedes that the "your work" exclusion does not bar coverage if Porter-Blaine itself used subcontractors to install the Chinese drywall, since the exclusion specifically provides that it "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."  (Mem. in Supp., Exs. 2-3, CGL Policy Form, p. 5 of 16).

As discussed above, Hanover claims it needs further discovery on this point.  But a review of Sam Porter's deposition testimony in the arbitration belies this claim, since in that testimony Porter clearly states that subcontractors performed the drywall installation at issue. Moreover, as noted above, Hanover's own documents show that Porter Blaine used subcontractors for new installations (like the ones DMC hired Porter Blaine to perform) and only used its own employees for repairs, renovation and patch work.  In light of this evidence from

---

[8] <u>See also</u> <u>In re Prudential Lines, Inc.</u>, 158 F.3d 65 (2d Cir. 1998) (finding multiple occurrences in asbestos exposure case); <u>Bausch & Lomb, Inc. v. Lexington Ins. Co.</u>, 679 F. Supp. 2d 345 (W.D.N.Y. 2009) (holding that damages from contact lens solution caused by multiple occurrences); <u>Flintkote Co. v. General Accident Assurance Co.</u>, 410 F. Supp. 2d 875 (N.D. Cal. 2006) (finding that liability of insured company that mined and sold asbestos products involved multiple occurrences); <u>Am. Red Cross v. Travelers Indem. Co. of R.I.</u>, 816 F. Supp. 755 (D.D.C. 1993) (finding multiple occurrences in tainted blood case).[8]  <u>See also</u> Windt at § 11:27 (listing cases and noting that the <u>American Red Cross</u> court distinguished cases holding that sales of a uniformly defective product constituted one occurrence since those courts so found "because such a resolution of the arguable ambiguity as to the number of occurrences resulted in additional coverage for the insured").

the record in the arbitration proceedings – and particularly in light of Hanover's own internal documents – the Court should refuse to permit Hanover further discovery on this issue and should rule that the "your work" exclusion does not apply.

## VII.   The Remaining Exclusions Are Not Dispositive

At the end of its brief in opposition, Hanover raises several exclusions that it claims may further limit coverage for the cost of removing and replacing the drywall itself.  (Br. in Opp'n. pp. 24-29).   Again, Hanover bears the burden of showing that these exclusions apply by reference to the record developed in the arbitration proceedings.  It has not shouldered its burden, and the Court should grant DMC's Motion on this point for that reason alone.  In addition, the non-applicability of the additional exclusions referred to by Hanover under the facts of this case is established as a matter of law.

The j(5) and j(6) exclusions raised by Hanover only apply while work is in progress. Martco Ltd. P'ship v. Wellons, Inc., 588 F.3d 864, 883 (5th Cir. 2009).  In this case, the damage occurred after operations were complete.   Furthermore, the Wenger case Hanover cites is decided under an earlier version of a different exclusion and is thus inapposite.  Nationwide Mut. Ins. Co. v. Wenger, 222 Va. 263, 265, 278 S.E.2d 874, 875 (1981); see also Scott C. Turner, Insurance Coverage of Construction Disputes, § 32:4 (West 2010) ("The exclusion cannot apply to property damage occurring after the insured's work is 'completed,'" and earlier versions of the exclusion are interpreted differently.)

With regard to the impaired property exclusion, Hanover admits and courts have concluded that such exclusion only applies when property has not been physically injured. (Hanover's Mem. Opp'n, p. 29); Essex Ins. Co. v. Bloomsouth Flooring Corp., 562 F.3d 399, 407-09 (1st Cir. 2009); see also McGranahan v. Ins. Co. of N.Y., No. Civ. 2:07-0065, 2008 WL

4850751, at *7-8 (E.D. Cal. Nov. 10, 2008).  As explained earlier in the factual discussion, all the homes suffered physical injury in this case.

Finally, as explained earlier, the repair and replacement is a necessary part of remediation for other covered property damage and not subject to these exclusions.  See Stonewall, 73 F.3d at 1211-12; Mut. of Enumclaw, 199 P.3d at 384-85.

As with the other, related challenges to the drywall repair and replacement increment of damage, because Hanover only contends that these exclusions apply to the cost of removing and replacing the drywall, partial summary judgment is appropriate even if the Court disagrees with DMC's arguments regarding these exclusions.  Thus, the record before the Court is more than sufficient for it to rule that the Policies cover the $4.9 million judgment with respect to all of the damages other than those damages.  And since the type of damages at issue were presented to the arbitrator, since those damages are now conclusively established and may not be challenged by Hanover in this proceeding, and since the amount of those damages is before the Court in the form of the charts presented into evidence at the arbitration hearing, there is nothing to preclude this Court from reaching this issue now and granting the Motion.

<u>**Conclusion**</u>

For these reasons, the Court should grant the Motion for Partial Summary Judgment and find that the 2005-06 and 2006-07 Hanover Policies cover Porter-Blaine for the $4.9 million judgment awarded DMC and that DMC is therefore entitled, under the circumstances and with the alternative positions outlined above, to recover $4 million of the judgment from Hanover under those Hanover Policies.

DRAGAS MANAGEMENT CORPORATION


By:  /s/ R. Johan Conrod, Jr.
W. Edgar Spivey (VSB No. 29125)
Kristan B. Burch (VSB No. 42640)
R. Johan Conrod, Jr. (VSB No. 46765)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  (757) 624-3000
Facsimile:   (757) 624-3169
wespivey@kaufcan.com
kbburch@kaufcan.com
rjconrod@kaufcan.com
*Counsel for Dragas Management
Corporation; Hampshires Associates, LC;
and Dragas Associates X, LC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2011, I will electronically file the foregoing with the

Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing (NEF)

to the following registered users:

> Thomas S. Garrett, Esq.
> Harman, Claytor, Corrigan & Wellman
> P. O. Box 70280
> Richmond, VA 23255
> (804) 747-5200
> (804) 747-6085 Facsimile
> tgarrett@hccw.com
> *Counsel for Hanover Insurance Company, and Citizens Insurance Company of America*
>
> John Malloy, Esq.
> Robinson & Cole, LLP
> 280 Trumbell Street
> Hartford, CT  06103
> jmalloy@rc.com
> *Counsel for Hanover Insurance Company, and Citizens Insurance Company of America*

      /s/ R. Johan Conrod, Jr.    
W. Edgar Spivey (VSB No. 29125)
Kristan B. Burch (VSB No. 42640)
R. Johan Conrod, Jr. (VSB No. 46765)
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA  23510
Telephone:  (757) 624-3000
Facsimile:   (757) 624-3169
wespivey@kaufcan.com
kbburch@kaufcan.com
rjconrod@kaufcan.com
*Counsel for Dragas Management Corporation; Hampshires Associates, LC; and Dragas Associates X, LC*

DOCSNFK-#1696180