UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| DRAGAS MANAGEMENT CORP., | : |
| Plaintiff, | : |
| v. | : Civil Action No. 2:10-cv-547 |
| | : **REDACTED – SEE FILING UNDER SEAL FOR COMPLETE VERSION** |
| THE HANOVER INSURANCE COMPANY, | : |
| and | : |
| CITIZENS INSURANCE COMPANY OF AMERICA, | : |
| Defendants. | : |

**The Hanover Insurance Company ("Hanover") and Citizens Insurance Company of America's ("Citizens") Sur-Reply to Dragas Management Corporation ("DMC")'s Reply To Citizens' Opposition To DMC's Motion For Partial Summary Judgment**

Because DMC raises legal arguments for the first time in its Reply Brief, Hanover and Citizens are compelled to file this Sur-Reply in order to ensure that the Court does not take Hanover and Citizens' silence as acquiescence. DMC misses the mark when it claims that Citizens' "primary position" is that it needs discovery before the court can enter summary judgment. (Rec. Doc. 23 at p. 1.) As Citizens set forth in its Opposition Brief, its "primary position" is that DMC has failed to meet its burden of proof to establish coverage under the 2005-2006 and 2006-2007 Citizens Policies. In addition, Citizens needs more time to establish whether certain exclusions apply to this coverage dispute.

    **I. It Is Black-Letter Law That DMC Bears The Burden Of Establishing Both Coverage And What Portion Of The Arbitration Judgment Is Covered Under The 2005-2006 And 2006-2007 Citizens Insurance Policies.**

10879814-v1

It is important to note that DMC apparently concedes that it retains the burden of establishing whether its claimed damages are actually covered under the Citizens Policies. *Maryland Cas. Co. v. Cole*, 156 Va. 707 (1931); *Furrow v. State Farm Mut. Auto. Ins. Co.*, 237 Va. 77 (1989); *see also State Farm Mut. Auto. Ins. Co. v. Robins,* 680 F. Supp.2d 761 (E.D. Va. 2010) (stating that the insured retains the burden of proof to establish coverage in a declaratory judgment action regardless of which party files the claim). In its Reply Brief, DMC raises, for the first time, that the burden of establishing *what portion of the arbitration judgment* is covered or not covered should be borne by Citizens. (Rec. Doc. 23 at 9.) First, the Court should not consider this argument because arguments raised for the first time in a Reply Brief are considered waived. *See, e.g., United States v. Wright*, 374 Fed. Appx. 386, 391 (4th Cir. 2010) ("Our prudential doctrines require that a claim be raised in a party's opening brief. Failure to do so waives consideration of the claim."); *DNT, LLC v. Sprint Spectrum, LP*, 2010 U.S. Dist. LEXIS 89493 at *36 (E.D. Va. Aug. 30, 2010) ("Defendants did put forth new evidence and argument not offered in their opening brief which [the Court] will therefore not consider.").

Second, DMC cites no Virginia law in support of its upside-down burden argument as to apportionment of the arbitration award between covered and non-covered damages, and in fact ignores Virginia law that establishes DMC bears the burden it seeks to avoid. Research indicates that the only case in Virginia that has considered the issue of which party has the burden of establishing covered versus non-covered claims in a declaratory judgment action after an underlying tort claim has resolved is *RML Corp. v. Assurance Co. of America.*, which determined that the insured retains this burden. *RML Corp. v. Assurance Co. of Am.*, 60 Va. Cir. 269, 270-71 (Va. Cir. Ct. 2002) ("RML will have the burden of proof at trial on the issue of apportionment of the settlement amount among covered and non-covered claims.").

In support of its argument, DMC cites nonbinding cases from other jurisdictions where the insurer "was obligated to seek an allocated verdict but failed to do so." (Rec. Doc. 23 at p. 9.) (citing Windt, *Insurance Claims & Disputes* § 6:27 (4th ed.)) However, DMC has failed to establish any evidence whatsoever that Citizens was "obligate[d] to seek an allocated verdict" in the underlying tort dispute. In fact, the law in Virginia (which DMC fails to cite in its Reply Brief) establishes that Citizens had no such obligation, which DMC ignores in its brief. In Virginia, when the insurer specifically notifies the insured that the parties' interests diverge with respect to whether damages are covered via a reservation of rights letter, the insurer is not considered in privity with the insured in the underlying tort action. *State Farm Fire & Cas. Co. v. Mabry*, 255 Va. 286, 289-90 (1998). Therefore, there can be no "obligation" to seek an allocation of a verdict or judgment against the insured in an underlying tort action. Because it is undisputed that Citizens defended Porter-Blaine under a reservation of rights, and specifically advised Porter-Blaine that it should retain its own counsel in the underlying tort action, Citizens had no obligation to seek an allocated verdict, and the burden of establishing which portion of the arbitration award is covered remains with DMC.

> **II. Citizens Is Not Collaterally Estopped From Litigating Claims In This Action When It Was Not A Party In The Underlying Action, And Its Provision Of A Defense To Its Insured In The Underlying Action Was Under A Reservation Of Rights To Deny Coverage.**

In addition to its fundamental misunderstanding of which party has the burden of establishing covered damages here, DMC also fundamentally misstates the controlling law with respect to collateral estoppel.[1] In support of its argument that Citizens is collaterally estopped from litigating issues that were involved in the underlying tort action, DMC cites out of state cases that are both inapposite and not binding on this Court. (Rec. Doc. 23 at 11.) DMC also

---

[1] DMC's argument on collateral estoppel should not be considered because it was raised for the first time in its Reply Brief. *United States v. Wright*, 374 Fed. Appx. 386, 391 (4th Cir. 2010).

3

fails to mention that the insurance coverage treatise it relies on in its burden argument specifically states that Virginia courts hold that the doctrine of collateral estoppel is "inapplicable since the insurer is not technically a party to the underlying lawsuit even when it is providing the insured a defense." Allan D. Windt, *Insurance Claims and Disputes* § 6:21 (5th ed.) (citing *Farm Bureau Mut. Auto. Ins. Co. v. Hammer*, 177 F.2d 793, 799) (4th Cir. 1949) (applying Virginia law)).

Regardless, similar to the issue of burden, the Virginia Supreme Court has decided that when an insurer defends an insured in an underlying tort action <u>under a reservation of rights</u>, the insurer is not collaterally estopped from litigating facts and legal issues in a subsequent declaratory judgment action involving a dispute over coverage. *State Farm Fire & Cas. Co. v. Mabry*, 255 Va. 286 (1998).

In *Mabry*, the insured shot Martin with a pistol four times while Martin was in Mabry's home. *Id.* at 288. State Farm was Mabry's homeowner's insurer, and issued a reservation of rights letter to Mabry indicating that insurance may not be applicable due to the intentional act exclusion. *Id.* State Farm retained an attorney to represent Mabry in the tort action, and a consent judgment was entered into whereby it was established that Mabry's acts were negligent. *Id.* at 289. In a declaratory judgment action regarding coverage, Martin moved for summary judgment claiming that State Farm was collaterally estopped from arguing that the shooting was intentional because in the underlying tort case, it was determined that Mabry was merely negligent. *Id.* The Virginia Supreme Court reversed the trial court's grant of summary judgment to Martin, stating that "collateral estoppel is not applicable in this case" because "State Farm was not a party to the tort litigation nor was it in privity with Mabry." *Id.* at 289-90. The Court found that State Farm was not in privity with its insured because:

4

> State Farm **reserved its right to challenge coverage** under the policy based on the nature of Mabry's acts. By so doing, State Farm established that its position diverged from that of its insured on this issue and that the interests of State Farm and Mabry with regard to coverage were adverse, not identical.

*Id.* at 290 (emphasis added); *see also Asplundh Tree Expert Co. v. Pac. Emplrs. Ins. Co.*, 269 Va. 399, 408 (2005) (following *Mabry*).

Here, Citizens expressly reserved its rights with respect to coverage issues when it provided a defense to Porter-Blaine. (Rec. Doc. 1) (Compl. at ¶ 13 ("Defendants provided Porter-Blaine a defense in the arbitration action, subject to a reservation of rights.")); Ex. 1, Decl. of T. Garrett at Ex A (Mar. 20, 2009 Reservation of Rights Letter from Citizens and Hanover to Porter-Blaine). In fact, the 17-page letter outlines numerous coverage issues and specifically advises that "you may consider it necessary to have your personal attorney remain involved in the developments of this case." *Id.* at p. 16. Because Virginia law establishes that Citizens was not a party in privity with Porter-Blaine in the underlying tort action, Citizens is not collaterally estopped from litigating any issues that were decided in the action DMC brought against Porter-Blaine. *State Farm Fire & Cas. Co. v. Mabry*, 255 Va. 286 (1998).

### III. DMC Fails To Establish What Portion, If Any, Of An Undifferentiated Arbitration Award Of $4.9 Million Is For Damages That Occurred During The 2005-2006 and 2006-2007 Citizens Policy Periods.

As set forth above, DMC retains the burden of establishing that its claimed damages occurred during the 2005-2006 and 2006-2007 Citizens' Policy periods. On the Record before the Court, there is no basis for the Court to conclude that any damage occurred during the policy periods of the 2005-2006 and 2006-2007 Citizens Policies, or what portion of the $4 million that DMC asks this Court to award represents sums incurred to fix damage that took place during the policy periods. First, DMC's argument that damages occurred during the operative Citizens

Policy periods was never raised in its Motion, was first raised in its Reply Brief, and is therefore considered waived. *United States v. Wright*, 374 Fed. Appx. 386, 391 (4th Cir. 2010).

Second, DMC states, without citing any evidence whatsoever, that the "evidence in the arbitration was that the damages occurred after the homes were completed, the homeowners moved into their homes . . . ." (Rec. Doc. 23 at p. 15.) Setting aside the fact that DMC cites to no evidence to establish this fact, as set forth above, even if this issue had been conclusively established in the arbitration proceeding, Citizens is not collaterally estopped from litigating this issue in this insurance coverage dispute. *State Farm Fire & Cas. Co. v. Mabry*, 255 Va. 286 (1998).

On the Record before the Court, DMC has failed to establish when the alleged damages occurred in each of the 74 homes, and in fact, the evidence submitted by DMC indicates that at least some of the damage occurred outside the 2005-2006 and 2006-2007 Citizens Policy periods. In its Reply Brief, DMC refers the Court to Exhibit A of Kokoska's Declaration indicating when Certificates of Occupancy ("C of O") were issued for the homes in order to establish that 13 of the homes could not have incurred damages during the Citizens Policy periods because the C of O was not issued until after the operative Citizens Policy periods. (Rec. Doc. 23 at 15.) Establishing when a C of O was issued does not indicate when damage occurred. What if odor did not become apparent to the homeowner until a year later? What if tarnishing of piping did not occur until 6 months after that? At the very least, the Court cannot assume that damage to property other than the drywall commenced immediately upon either the installation or the issuance of a C of O in the absence of specific proof. *See, e.g., Aetna Cas. & Sur. Co. v. Ply Gem Indus., Inc.*, 778 A.2d 1132 (N.J. App. Div. 2001) ("in the absence of more proofs," the

6

court could not conclude that the defective product began to deteriorate immediately upon installation).

In fact, importantly, the corporate representative of DMC in parallel litigation testified that he had no facts that could establish when drywall-induced damage began or whether the effects of the drywall increased or decreased over time. *See* Decl. of T. Garrett at Exh. B, Jan. 25, 2011 Kokoska Depo. at 205:3-206:9. [**REDACTED**] Moreover, DMC refers the court to an unnamed person's deposition testimony from the arbitration proceeding for support of its contention that damages took place during the 2005-2006 and 2006-2007 Citizens Policy periods. (Rec. Doc. 24-5.) Setting aside the fact that the identity of the deponent is not clear from the Record, the deponent testifies throughout the transcript that damages were incurred outside the 2005-2006 and 2006-2007 Citizens Policy periods. *See, e.g., id.* at 49:18-21 ("by the summer of 2008, we had experienced air conditioning coil failures in 26 homes"); 61:13-18 (some homeowners experienced coil failures in "early summer 2009").

Because DMC has failed to establish what portion, if any, of the damages encompassed by the $4.9 million arbitration award occurred during the 2005-2006 and 2006-2007 Citizens Policy periods, the Court should deny DMC's motion for summary judgment.[2]

### IV. Citizens Is In Compliance With Fed. R. Civ. P. 56(d) And There Remains An Issue Of Fact As To Whether Various Policy Exclusions Apply.

#### A. The Affidavit Of Attorney Malloy Establishes The Necessary Elements of Fed. R. Civ. P. 56(d).

In order to avoid its error in jumping the gun by filing its motion for summary judgment two months after filing its complaint in this action, DMC attempts to convince the Court that Citizens did not fulfill the requirements under Fed. R. Civ. P. 56(d) in support of its request for

---

[2] Based on the arguments set forth in this section of the sur-reply, it should be noted that Citizens does not "concede" that it is liable for DMC's claimed damages for repair and replacement of drywall.

7

more time for discovery. This argument is without merit. The "voluminous record" and discovery related to the underlying arbitration was conducted by Porter-Blaine, not Citizens. Regardless, DMC does not contest the fact that the issues in dispute in the arbitration were not insurance coverage issues, which are at issue in this action. As to the discovery at issue in the parallel action, *Builders Mutual Ins. Co. v. Dragas Management Corp.*, Docket No. 2:09cv185 (E.D. Va. 2009), that action also involves different coverage disputes (and therefore different discovery issues) than the issues in this action. Otherwise, DMC would not be able to file this coverage action under the doctrine of prior pending action. *See, e.g., Gillikin v. Eastern Dredging & Constr.*, 1996 U.S. Dist. LEXIS 17259 (E.D. Va. 1996); *Ulmet v. United States*, 888 F.2d 1028, 1031 (4th Cir. 1989).

The Opposition Brief and the Court Docket reflect that the Fed. R. Civ. P. 16(f) conference has not even been held in this case. Pursuant to the requirements of Fed. R. Civ. P. 56(d), Attorney Malloy set forth in his affidavit the information that Citizens needs to conduct discovery and how it is to be obtained, how a genuine issue of material fact is affected by discovery of the information, and what efforts Citizens has set forth to obtain the information (issuing interrogatories and 30(b)(6) deposition notice). *United States v. Smithfield Foods, Inc.*, 969 F. Supp. 975, 978 (E.D. Va. 1997). Citizens is therefore in compliance with the requirements of Fed. R. Civ. P. 56(d) in establishing that it needs more time to conduct discovery.

### B. Citizens Needs More Time To Discover Facts Related To Whether Certain Exclusions Apply.

DMC concedes that if Porter-Blaine did not use subcontractors with respect to the work performed, the Citizens Policies would exclude coverage for DMC's damages under the "Your

8

Work" exclusion. In its Reply Brief, for the first time,[3] DMC introduces notes from *Citizens'* underwriting file and more deposition testimony from Sam Porter indicating that Porter-Blaine *typically* used subcontractors for new work as evidence to conclusively establish that Porter-Blaine used subcontractors for the installation of drywall on *this* job. Reply Brief (Rec. Doc. 23 at 19). This evidence is simply inadequate for purposes of summary judgment. It is possible that Porter-Blaine's general practices changed over time, and that Porter-Blaine did not employ its general practices on this job, or even that Porter-Blaine used subcontractors on some of the 74-homes, but not others. There is no evidence that conclusively establishes whether Porter-Blaine used subcontractors *on all 74 homes with regard to this job*. The Court should permit Citizens to conduct discovery on this point in order to establish whether or not the "Your Work" exclusion applies.

Similarly, the "Performing Operations" exclusion may apply if the alleged damages occurred during installation. DMC's corporate representative testified that he did not know when the alleged damages started to occur in each of the 74 homes. *See* Decl. of T. Garrett at Exh. B, Jan. 25, 2011 Kokoska Depo. at 205:3-206:9. [**REDACTED**] Citizens should be given time to discover the answer to this question. *See, e.g.*, *Credit General Ins. Co. v. Abateco Services, Inc.*, 11 Fed. Appx. 47 (4th Cir. 2001), (exclusion applies to property damage that takes place while the insured is actively performing operations).

Finally, with respect to the "Impaired Property" Exclusion, DMC simply states (without any support) that "all the homes suffered physical injury" in this case. However, as set forth in Citizens Opposition, in at least some of the homes, drywall was replaced without any actual claim by the homeowner that there was any damage to electrical or plumbing equipment or any

---

[3] DMC's evidence set forth for the first time in its Reply Brief should be ignored because it was not introduced in its Motion. *United States v. Wright*, 374 Fed. Appx. 386, 391 (4th Cir. 2010).

other property. (Rec. Doc. 21-1) (J. Malloy Aff. at Exh. A.) The impaired property exclusion operates to bar coverage in these circumstances, and the units and damages that fall into this category must be identified. For these reasons, pursuant to Federal Rule of Civil Procedure 56(d), the insured's motion for partial summary judgment must be denied or continued until such time, if ever, as these facts may be conclusively established.

### V. Conclusion

For the reasons cited in its Opposition Brief and this Sur-Reply, Hanover and Citizens respectfully request that the Court find that (1) DMC has not met its burden of proving that it is entitled as a matter of law to recover $4 million from Citizens' 2005-2006 and 2006-2007 Policies based on an undifferentiated $4.9 million arbitration award, (2) if the Court finds that there is an occurrence, there is only one occurrence, and (3) Citizens should be permitted time to conduct discovery applicable to its defenses in this action, and therefore, DMC's Motion For Partial Summary Judgment (Rec. Doc. 11) should be denied.

Dated: January 31, 2011                  Respectfully submitted,

                                         /s/
                                         Thomas S. Garrett
                                         VSB No. 73790
                                         Counsel for Hanover Insurance Company
                                         and Citizen's Insurance Company of America
                                         Harman, Claytor, Corrigan & Wellman, P.C.
                                         P.O. Box 70280
                                         Richmond, Virginia 23255
                                         Phone: 804-747-5200
                                         Fax: 804-747-6085
                                         tgarrett@hccw.com

and

John P. Malloy
(*pro hac vice* application pending)
Counsel for Hanover Insurance Company
and Citizen's Insurance Company of America
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103
Phone:  860-275-8200
Fax:  860-275-8299
jmalloy@rc.com

## **CERTIFICATE**

      I certify that on this 31st day of January 2011, I filed the foregoing electronically with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

W. Edgar Spivey, Esq.
Kristan B. Burch, Esq.
R. Johan Conrod, Jr., Esq.
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA  23510
*Counsel for Plaintiff Dragas Management Corporation*

      /s/
Thomas S. Garrett
VSB No.  73790
Counsel for Hanover Insurance Company
and Citizen's Insurance Company of America
Harman, Claytor, Corrigan & Wellman, P.C.
P.O. Box 70280
Richmond, Virginia  23255
Phone: 804-747-5200
Fax: 804-747-6085
tgarrett@hccw.com