UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| DRAGAS MANAGEMENT CORP., : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. 2:10-cv-547 |
| v. : | |
| : | |
| THE HANOVER INSURANCE COMPANY, : | |
| : | |
| and : | |
| : | |
| CITIZENS INSURANCE COMPANY : | |
| OF AMERICA, : | |
| : | |
| Defendants. : | |

**DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT THE
RECORD IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff's motion to supplement the already voluminous record before the Court on plaintiff's motion for partial summary judgment should be denied because: (a) Sam Porter's deposition testimony from an arbitration to which defendants were not a party is inadmissible; (b) defendants did not, contrary to plaintiff's unsupported assertions, admit in written discovery responses that Porter-Blaine used subcontractors to install the drywall at issue; (c) the report of its purported expert, Gerald Davis, is inadmissible; (d) even if it is admissible, Davis' opinions are contradicted by defendants' expert, and a genuine issue of material fact therefore exists; and (e) despite ample opportunity to do so, plaintiff still has not demonstrated the sum it is supposedly entitled to receive under the Citizens policies at issue. Defendants therefore respectfully request that plaintiff's motion to supplement the record and its motion for partial summary judgment be denied.

**I.     Sam Porter's Deposition Testimony From the Arbitration Between Dragas and Porter-Blaine Is Not Admissible.**

Plaintiff first asks this Court to enter judgment in its favor, declaring the "your work" exclusion in the Citizens policies at issue inapplicable, because Porter-Blaine supposedly used sub-contractors to install all of the drywall in the 74 residences at issue, and the "sub-contractor exception" to the exclusion therefore applies.  In support of that contention, plaintiff again points to the deposition testimony of Sam Porter from the arbitration between Porter-Blaine and Dragas, in which Porter supposedly testified that Porter-Blaine used subcontractors.  Porter's deposition testimony from the arbitration (in which Citizens was not a party) is inadmissible and therefore cannot be considered on a motion for summary judgment.

It is well-settled that a motion for summary judgment must be based upon admissible evidence.  See, e.g., Davis v. Old Dominion Tobacco Co., Inc., 2010 WL 5174779, *9 (E.D. Va. 2010), citing Toll Bros., Inc. v. Dryvit Sys., Inc., 432 F.3d 564 (4th Cir. 2005) ("Summary judgment is warranted when the *admissible* evidence forecasted by the parties demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law") (emphasis added).  Porter's deposition testimony in the arbitration proceeding is classic, inadmissible hearsay; it is an out-of-court statement by Porter, offered by Plaintiff in this action for the truth of the matter asserted.  See F.R.E. 801(c), 802.  Furthermore, Porter's prior deposition testimony is not admissible under an exception to the hearsay rule.

Testimony from a deposition in a prior action is only admissible in a subsequent action if the declarant is unavailable, *and* the requirements of F.R.E. 804(b)(1) are satisfied.  See, e.g., Horne v. Owens-Corning Fiberglass Corp., 4 F.3d 276 (4th Cir. 1993) (discussing admissibility of deposition transcript from a prior action).  Plaintiff has made no showing that Porter is unavailable, or that plaintiff could not have deposed Porter in this case (as opposed to the

arbitration in which Citizens was not a party).[1] More critically, however, in order for the hearsay exception set forth in F.R.E. 804(b)(1) to apply, a party to the arbitration in which Porter was deposed must have had the same motive and interest in cross-examining Porter as Citizens. As the Court held in Horne:

> When reviewing the admissibility of evidence pursuant to Rule 804(b)(1), we have focused on the similarity of motives between the predecessor in interest and the one against whom the deposition is now offered to determine the scope of Rule 804(b)(1). *In a situation in which the motives differ, the testimony may not be introduced.*

Horne, 4 F.3d at 282 (emphasis added). Under this rule, Porter's prior testimony is inadmissible.

As the Court may recall, Porter was deposed in an arbitration involving claims by Dragas for the installation of defective Chinese-manufactured drywall in 74 homes. The installation of drywall was performed pursuant to a series of written contracts between Porter-Blaine and certain Dragas-related entities. Since the arbitration involved whether the drywall was defective, and whether the amounts spent by Dragas to remediate homes in which the drywall was installed were fair and reasonable, whether Porter-Blaine used subcontractors to install the drywall in some, all or none of the homes was irrelevant to Porter-Blaine's defense. The attorneys defending Porter-Blaine had no reason to care whether Dragas' attorneys inquired into the use of subcontractors, and therefore no reason to cross-examine Porter on that issue. In contrast, whether Porter-Blaine used subcontractors to install drywall is a central issue in this case. Where, as here, the motive and interest in cross-examining a witness are different in the prior and

---

[1] Plaintiff may complain that defendants should have deposed Porter, as they indicated in their opposition to plaintiff's motion for partial summary judgment they intended. Defendants ultimately decided not to depose Porter. Plaintiff apparently made the same decision, the consequences of which – an absence of admissible evidence regarding Porter-Blaine's alleged use of subcontractors – must fall on plaintiff as the party with the burden of proving that the "subcontractor exception" to the "your work" exclusion applies.

subsequent actions, deposition testimony from the prior action is inadmissible in a subsequent action. See, e.g., Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156 (4th Cir. 1986) (prior testimony inadmissible where the party against whom it was offered in a subsequent case did not have the same motive to develop the testimony on cross-examination that it had in the subsequent action). Porter's deposition testimony in the arbitration is therefore inadmissible in this action, and should not be considered on plaintiff's motion for partial summary judgment.

## II. Defendants Did Not Admit In Their Discovery Responses In This Action That Porter-Blaine Used Subcontractors To Install The Drywall At Issue.

Plaintiff also contends in its motion that defendants "admitted several facts cited by DMC for its conclusion that Porter-Blaine used subcontractors." See Pl. Motion, p. 4. Plaintiff does not identify those supposed admissions, but instead attaches defendants' responses to plaintiff's requests for admission as "Exhibit 1" to the motion, and asks the Court to ferret-out the supposedly important admissions. Even a cursory review of defendants' discovery responses shows that plaintiff is simply wrong in its characterization of those responses:

- The first request for admission asks defendants to admit that Porter-Blaine used subcontractors to install all of the Chinese drywall at issue. See Pl. Motion, Exhibit 1 at p. 2. Defendants objected to that request on the grounds that they have no personal knowledge of Porter-Blaine's conduct, and stated further that they could neither admit nor deny the request for that same reason. Id., p. 3. Defendants' response does not admit any of the "facts" on which plaintiff relies in support of its motion for partial summary judgment.

- In requests for admissions numbers 2 and 3, plaintiff asks defendants to admit or deny that Porter's deposition transcript includes certain testimony concerning the use of subcontractors. Id. Defendants admitted, subject to objections, that the deposition

4

  transcript included the passages quoted by plaintiff in its requests for admissions. <u>Id.</u> Here again, defendants admitted nothing more than the fact that an inadmissible deposition transcript contains certain statements. Defendants did not adopt Porter's testimony or otherwise suggest that they concede his testimony was accurate and/or complete.

- Finally, in requests for admissions 4, 5 and 6, plaintiff ask defendants to admit that a Loss Control Survey completed in 2005 was part of defendants' underwriting file, considered by them during the underwriting process, and includes statements attributed to Porter in which he describes the use of subcontractors. <u>Id.</u>, pp. 4-5. Defendants admitted that the report was part of the underwriting file and was considered during the underwriting process, but stated that they could not admit or deny the truth of statements attributed to Porter in that report (which in any event is also inadmissible hearsay). Defendants also responded that they had no way of knowing whether statements supposedly made by Porter in 2005 were true when made or accurately reflected Porter-Blaine's conduct years later when the houses at issue in this action were built. <u>Id.</u>, p. 5. Here again, defendants did not admit that Porter-Blaine used subcontractors to build the houses at issue.

 For the foregoing reasons, the Court should not only decline to supplement the record as requested by plaintiff, it should deny plaintiff's motion for partial summary judgment.

5

**III.     The Report Of Gerald Davis, Which Is Offered As Conclusive Proof That Damage Occurred Upon Occupancy Of The Residences, Is Inadmissible.  Davis' Conclusions Are Also Disputed By Defendants, Which Creates A Factual Dispute Precluding The Entry Of Summary Judgment.  Plaintiff Still Has Not Met Its Burden Of Proving How Much Damage It Allegedly Sustained During Policy Periods Of The Two Citizens Policies At Issue.**

Through its motion to supplement the record, plaintiff offers the expert report of Gerald Davis ("Davis Report") as conclusive and purportedly undisputed proof that off-gassing from Chinese Drywall caused damage to the 74 residences at issue upon occupancy of those homes, and continuously thereafter.  See Pl. Motion, p. 4.  Plaintiff's attempt to cure the most significant defect in its original motion – its failure to establish *when* the damage at issue occurred – should be rejected.  The Davis Report is inadmissible, and even if it were admissible, Davis' opinions are disputed.  Plaintiff's motion to supplement the record should therefore be denied.

Plaintiff further contends in its motion to supplement the record that the Davis Report establishes that plaintiff's original motion for partial summary judgment should be granted – that is, with the Davis Report and the evidence previously submitted by plaintiff, the Court can conclude that plaintiff incurred $4 million in covered property damage during the two years the Citizens insurance contracts at issue were in force.  Plaintiff again misses the mark, and despite many bites at the apple, has still failed to meet its burden of proof.  In this regard, plaintiff treats the 74 homes affected with the Chinese Drywall problem as one monolithic indivisible claim, and the Citizens policies as providing two-years of overlapping and indivisible coverage.  That is not the case.  Plaintiff bears the burden of proving, *on a house-by-house basis*, what quantum of covered damage occurred during each policy period of the two separate Citizens policies.  Plaintiff has not met that burden, and its motion for partial summary judgment should be denied.

### A. The Davis Report Is Not Admissible Because It Is Hearsay.

As stated above, it is black letter law that a motion for summary judgment must be decided on *admissible* evidence. See, e.g., Old Dominion Tobacco Co., Inc., supra.; Toll Bros., supra. An unsworn expert report, such as the Davis report attached to plaintiff's motion, is not admissible into evidence, and thus cannot be considered on a motion for summary judgment. See, e.g., Md. Highways Contractors Ass'n v. State of Md., 933 F.2d 1246, 1251-52 (4th Cir. 1990) ("[H[earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment."); Sigler v. American Honda Motor Co., 532 F.3d 469, 486 (6th Cir. 2008) (district court erred in considering defendant's expert reports submitted in connection with its motion for summary judgment, as expert reports constitute inadmissible hearsay); Tuttle v. McHugh, 2010 WL 432078 (W.D.Va. 2010) ("Unsworn statements, including unsworn pleadings, do not meet the requirements of Rule 56(e)"). The inadmissible Davis report should be disregarded by the Court and not admitted into the record on summary judgment.

### B. Davis' Opinion Regarding When The Damage Occurred Is Inadmissible Because It Is Internally Inconsistent, Unreliable, And Not Based Upon Sound Methodology. Defendants Intend To File A Motion *In Limine* To Preclude Davis From Offering An Opinion As To When The Damage Occurred.

The Davis Report should not be admitted for the additional and independently sufficient reason that it is internally inconsistent, based upon flawed methodology, and therefore inherently unreliable. See F.R.E. 702; Perkins v. U.S., 626 F. Supp. 2d 587 (E.D.Va. 2009) (unreliable expert testimony is not admissible under Rule 702); Tunnell v. Ford Motor Co., 245 Fed.Appx. 283 (4th Cir. 2007) (affirming exclusion of expert who intended to offer an opinion that was not based upon sound methodology and that was not generally accepted by experts in his field).

By way of example, Davis' conclusion that damage caused by off-gassing of Chinese Drywall commences when a homeowner moves into a residence is based, in substantial part, on

7

his examination of a number of sections of copper pipe (known as "U-bends") from air conditioning coils from the affected homes.  <u>See</u> Davis Report, p. 10.  Davis classified the U-bends according to the amount of corrosion they exhibited.  <u>Id.</u>  U-bends that had been in the homes for 1 month, 5 months and 8 months were all categorized by Davis as appearing "almost new," and having no discernible corrosion on them.  <u>Id.</u>  At the same time, U-bends from other homes were found by Davis to have significant corrosion after as little as 7 months.  <u>Id.</u>  That data demonstrates that the timing of the Chinese Drywall-caused damage varied from house-to-house.  The data does not support the conclusion, proffered by Davis, that the damage in every home commenced as soon as a homeowner moved into the house.  Davis' opinion is contradicted by his own data, and is therefore inconsistent, unreliable and inadmissible.  At a minimum, if the Court allows Davis to offer that opinion, a jury will be free to disbelieve Davis and not credit his opinion, and summary judgment therefore should not be entered in favor of plaintiff.

      **C.**    **Contrary To Plaintiff's Assertion That Davis' Opinion Is "Uncontroverted," It Is In Fact Disputed By Defendants.  At A Minimum, There Is A Disputed Issue Of Material Fact As To When The Damage At Issue Occurred, Which Precludes The Entry Of Summary Judgment In Favor Of Plaintiff.**

It is not clear why plaintiff characterizes Davis' opinion as "uncontroverted," when in fact Davis' conclusion regarding when the damage at issue occurred is disputed.  Although not mentioned in plaintiff's motion to supplement the record, defendants timely served an expert report from Stefany Mason, Ph.D., in which she opined, in sum, that there are too many variables and the mechanism of the release and migration of gas from Chinese Drywall is too poorly understood for anyone to be able to conclude when damage caused by Chinese Drywall occurs.  <u>See</u> Mason Report (attached as Exhibit A).  In this regard, Dr. Mason concludes:

> [T]he mechanism for the formation and release of the sulfur gases from corrosive drywall is not known.  There are a number of variables, among others, temperature, relative humidity, amount of

8

> corrosive board, air flow patterns, and time of year that affect the rate and manner of release of the sulfur gases. Neither is the rate or mechanism for the formation of the copper sulfide corrosion in homes with corrosive drywall well-characterized.
>
> Based on the lack of understanding of the rates and mechanisms of formation and release of reduced sulfur gases from corrosive drywall it is not possible to determine *a priori* when reduced sulfur gases are first released from the drywall and how much reduced sulfur gas is in the building at any given time or at any given location. Thus, it cannot be definitively determined when the reduced sulfur gas will reach susceptible materials.

See Mason Report, p. 1. Mason thus concludes that Davis cannot credibly express an opinion as to when damage occurred. If the jury credits Mason, it will have to find that plaintiff has not met its burden of proof on the issue of when the damage at issue occurred.

Since Mason clearly contradicts Davis' dubious conclusions about when the damage occurred, summary judgment cannot be granted based upon Davis' report, even if it is admitted into the summary judgment record despite being classic hearsay.[2] See Torkie-Tork v. Wyeth, 739 F.Supp.2d 895, 907 (E.D.Va. 2010) (genuine issue of material fact exists, and summary judgment therefore cannot be granted, where an issue turns on a "battle of the experts"). The Davis report should not be admitted into the record on summary judgment, and in any event does not provide a basis for the entry of judgment in favor of plaintiff.

---

[2] By citing to Mason's report, defendants do not concede or intend to suggest that Davis' report is admissible. Rather, defendants offer the Mason report only to show that if the Court admits the Davis report, Davis' conclusions are disputed by defendants. In any event, defendants, as the non-moving party, may utilize inadmissible hearsay to defeat summary judgment as long as that hearsay evidence is capable of being reduced to admissible evidence at trial. See U.S. Dept. of Housing and Urban Dev. v. Cost Control Marketing & Sales Mgt. of Va., Inc., 64 F.3d 920, 926 n.8 (4th Cir. 1995). Since Mason will be available to testify at trial, the opinions expressed in her report are admissible to defeat summary judgment, even though the Davis report is not admissible.

## IV. Plaintiff Still Has Not Proven That It Sustained $4 Million In Damage During The Periods The Citizens Policies At Issue Were In Effect.

Despite having ample opportunity to do so, plaintiff still has not met its burden of proving that it sustained $4 million in covered damage during the two years the Citizens policies at issue were in force.[3] Nor has plaintiff established how much covered damage it sustained during that period of time, and therefore the Court cannot, as plaintiff requests, scour the voluminous summary judgment record before it and calculate the amount supposedly owed by Citizens.

Plaintiff's theory (advanced by Davis but disputed by defendants) is that damage caused by off-gassing of Chinese Drywall commenced when people moved into the 74 homes at issue, and was continuous thereafter. Assuming that contention is correct (again, it is disputed by defendants), the Court still cannot enter judgment in plaintiff's favor for several reasons.

As an initial matter, plaintiff has not supplied this Court with evidence as to when people moved into each of the 74 homes at issue. Rather, it has submitted a chart showing when "certificates of occupancy" were issued, and apparently hopes the Court will conclude that people moved into the homes on or about the same date the certificates of occupancy were issued. See Kokoska Decl., Exhibit A. There is no basis for the Court to make that assumption.

Secondly, and more critically, the evidence shows that 13 of the 74 homes received certificates of occupancy after the expiration of the last Citizens policy at issue (November 15, 2007), and therefore the policies could not possibly cover damage to those houses. Id. Plaintiffs concede as much in their reply brief in further support of their motion for partial summary

---

[3] As the Court will recall, it is disputed whether the limit of liability potentially applicable under those policies is $1 million per policy or $2 million per policy. For reasons stated in their prior briefs, defendants contend that the policies provide (at most) $1 million in coverage because the drywall-related damage arises from a single "occurrence."

judgment. See Pl. Reply, p. 15. Of the remaining 61 homes, 44 did not receive certificates of occupancy until after the expiration of the November 15, 2005 – November 15, 2006 Citizens policy, so that policy cannot possibly cover damage to those 44 homes, as plaintiff would also presumably concede. Id. Even if one were to assume that all of the damage to the 17 homes that received certificates of occupancy prior to the expiration of the first Citizens policy period (the 2005-2006 policy) is covered under that policy, that damage does not equal $2 million. See Burch Declaration.[4] Likewise, even if one assumes that all of the damage to the 44 houses that received certificates of occupancy during the second Citizens policy period (the 2006-2007 policy) is covered under that policy, the damage exceeds the maximum potential limit of liability on that policy, $2 million, and therefore plaintiff cannot recover all of the damage during that policy period. Simply put, plaintiff has not demonstrated what sum (if any) it is entitled to recover under the Citizens policies at issue, and it is not the Court's job to scrub the voluminous record to try to discern something that should have been presented concisely and directly by plaintiff in the first instance. For this reason, plaintiff's motion to supplement the record should be denied, as should its motion for partial summary judgment.

## V. Conclusion

For the foregoing reasons, defendants respectfully request that the Court deny plaintiff's motion to supplement the record on plaintiff's motion for partial summary judgment. For the

---

[4] By citing to the documents submitted by plaintiff in support of its motion for partial summary judgment, such as the Burch and Kokoska declarations, defendants do not concede the admissibility of that evidence or admit the accuracy of the information contained in the documents submitted. Defendants discuss that evidence only to illustrate that even if all of that evidence is credited, it still shows that plaintiff is not entitled to judgment in its favor in the amount of $4 million. Likewise, by discussing and responding to plaintiff's arguments, defendants do not intend to adopt or assert a position on when the damage at issue occurred or the proper "trigger of coverage" theory that should be applied.

reasons discussed here and in defendant's prior briefs, defendants also respectfully request that the Court deny plaintiff's motion for partial summary judgment.

Date:  May 27, 2011							Respectfully submitted,

/s/
Thomas S. Garrett
VSB No.  73790
Counsel for Hanover Insurance Company
and Citizens Insurance Company of America
Harman, Claytor, Corrigan & Wellman, P.C.
P.O. Box 70280
Richmond, Virginia  23255
Phone:  804-474-5200
Fax:  804-747-6085
tgarrett@hccw.com

and

John P. Malloy
(admitted *pro hac vice*)
Counsel for Hanover Insurance Company
and Citizens Insurance Company of America
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT  06103
Phone:  860-275-8200
Fax:  860-275-8299
jmalloy@rc.com

## **C E R T I F I C A T E**

I hereby certify that on the 27th day of May, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> W. Edgar Spivey, Esq.
> Kristan B. Burch, Esq.
> R. Johan Conrod, Jr., Esq.
> Kaufman & Canoles, P.C.
> 150 West Main Street, Suite 2100
> Norfolk, VA 23510

/s/
Thomas S. Garrett
VSB No. 73790
Attorney for The Hanover Insurance Company and
Citizens Insurance Company of America
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
Phone: 804 747-5200
Fax: 804-747-6085
tgarrett@hccw.com